Case number 22-5135, Billy Lemaster et al. v. Lawrence County KY et al., argument not to exceed 15 minutes per side. Ms. Phelps, you may proceed for the appellants. Your Honor, I have reserved one minute for rebuttal. Good morning, Your Honors, and may it please the Court. My name is Laura Jane Phelps. I'm from Grayson, KY, and I represent the appellants in this matter. The real issue that the Court is faced with today is whether or not to make an inference as to the causation element based on the temporal proximity between the constitutionally protected speech and the adverse action in line with Anders, or should the Court decide to resolve the uncertainty that this Court talked about in Anders, the uncertainty in the Rudd case, which is the but-for causation case. We believe in the record that this case supports an application to Anders because Anders is a non-point precedent that was decided in this Court just last year, and also the facts in this case are not distinguishable from Anders, and in fact, there's almost an identical time period of temporal proximity in between the protected speech and the adverse action. What do you make of, if we just look at it from the April 2019 Facebook post, where Carter called up Billy the Master afterwards and said, hey, please take that down, what do you make of the fact that the towing business increased immediately after that conversation? Doesn't that suggest that on causation crowns, the April 2019 comments could not have led to a later decrease in business, since after he took it down, it at least led to an immediate increase in towing business? Yes, Your Honor, and that's a great question because in the temporal proximity analysis, like we're suggesting the Court uses, then those increase in towing calls in between the speech and the adverse action wouldn't necessarily be fatal to a but-for cause showing because in the temporal proximity standards, the Court looks at the totality of the record. And why I think the but-for cause in this particular line of cases is confusing is because there is so much happening over a long span of time, and you don't necessarily have one In the Anders case, this Court did find that the temporal proximity was four months, but the Court did have concerns that, well, maybe the decision would be different if new evidence came up that seemed to refute but-for causation. But that still leaves out the fact that the protected speech had been going on since 2015, and statements he made to investigators during that time. And so I think with the, excuse me, I'm going to get some water, I'm sorry. Excuse me, Your Honors. So I think in the but-for test, we're really limiting the timeline in which the retaliatory conduct can be viewed. And so, because essentially in a but-for cause analysis, it's much more of a fact-dependent standard. And that trying to determine his motive and his mindset is going to be just a weighing of credibility of the evidence. And that is a question for the jury. Can I ask, in your reply brief, you suggested if we find that there's an issue of fact about whether the April 2019 Facebook post caused a reduction in business over the summer into September 2019, that we wouldn't even need to get into the question about whether the later post from August 2019, whether that is actually protected speech. Do you still stand by that, that if we were to find a question of fact with respect to the earlier Facebook post, that we could just not get into the question about whether his comment about the relationship was protected speech? Yes, Your Honor. So actually, the post that both parties agree and that the district court did find was protected was that earlier post. Then there's an appeal over whether the later post was protected speech. And I'm just curious whether we would have to get into that if we reversed on the April 2019. So if we found that the criticism of the firing of the employee could have caused a reduction in towing, do we have to get into whether the comment about the relationship is protected speech? In your reply brief, you suggested that we might not need to do that and then the jury could just consider the earlier statement. I think I understand your question. I think in my reply brief, I meant to say that the court need only consider the August post. And I think what I meant to say is that if you still find that the April post is. But yes, yes, you would. Because that April post, it is crucial to our case. But yes, of course, on de novo review, if the court finds that the April post is not protected, then yes, that is fatal. No, the April post, everybody agrees that the April post is protected. Correct. So the August post, it strikes me as it raises a significant issue of First Amendment law. And my only question is, do we actually have to get into the August post if we actually find there is a dispute of fact over whether the earlier protected post caused the reduction in business? Okay, I think I understand your question now. I'm sorry, Your Honor. No. So our position is that the court will not even have to address the August post unless the court does not follow its precedent in Anders. But also if the court finds that also under the but-for cause test, that plaintiff's claim of causation also fails. And so really, the August 2019 post, we're really only asking the court to consider if the April post is not protected. Because it is a lot weaker of a post. And I think if the April post were flip-flopped with the August post, I don't think that we would be here right now. Because it was five days before. But there are issues with the August post. And while I think it could be a very in-depth legal analysis on how the August post could be characterized, we don't need it to prove our case. Your answer when you said, no, we don't need to address it, seemed to answer the question. And then you gave us this long explanation of your no, which went around the mulberry bush two or three times. I think the answer is no, isn't it? Yes, it is. Good answer. Probably ought to stop right there. Okay, sorry. Not your argument, just the answer to that question. Okay. I'm sorry, this is my first time. And the court should go by its precedent in Anders because in this specific line of cases, specifically retaliation against towing companies for First Amendment speech, this is clearly a developing line of cases. And it's unique because in the Lucas case, the court did not find that towing companies were an employee of the government, but they did find that they still deserve protection. And so these cases are unique. And I think using the temporal proximity and being able to draw an inference based on the protected speech and the adverse action, those two points are always going to be concrete. Either there was protected speech and there was an adverse action. And we know what that timeline is and what those dates are for all three of these cases. Where it gets messy, though, is in the but-for cause analysis, there are a lot of things surrounding these facts. But I think allowing the court to make an inference as to temporal proximity, assuming that there is sufficient evidence in the record which proves retaliatory motive, I think that would be appropriate in this case because... Let me try to reframe your argument to make sure I understand it. Yes. Anders says four months. And you've been talking a lot about temporal proximity. But the point of Anders is that four months is enough if it's coupled with other evidence. It seems to me your argument here should be that the district court didn't properly consider the other evidence that you've mustered in connection with the four months. Is that your argument? Yes, Your Honor. What is the other evidence that you say that Bunning didn't take into account for which we should remand this case and tell him to take it into account? So in addition to the temporal proximity, the phone call of April 15th was not considered, wherein Judge Carter calls Lemaster and says, if you wanted something done, you should have picked up the phone and called me and said something. Also, the May 2020 testimony by dispatcher Barbara Howard, where she said, well, yeah, the judge did come to dispatchers and he did tell us to not call you. And then also, I think the scheme that Carter created to make it look like Lemaster was being called fairly, the scheme that he organized with dispatchers on how they were to pick up the phone and then put the phone back down, but it still looks like he was called in the CAD system. And I think that in light of the fact that this case is also different than the first two cases because in Lucas there were no policies and procedures for the towing rotation list, but in this case there are. There are policies and procedures, and not only that, in the Anders case, one of Cuevas' defenses was that in his role as the post commander, he did have authority to oversee towing operations. But in this case, we don't have that either. He admits in his affidavit, he had no authority at all to oversee the towing operations. And so if he didn't have any authority, and it certainly wasn't appropriate to remove Lemaster from the towing list because that has to be voted on by the board, then why? And coupled with the testimony from dispatchers saying that he's never made this directive about another company, we really don't see him all that much except the few times that he came in there to tell them to remove Lemaster towing. Isn't your argument you just made about lack of authority fatal to your Monell claim? No, Your Honor, because in the Monell case, we are arguing that he created, he essentially created his own policy that dispatchers were to follow. A lot of people do things without authority, that's why there are lawsuits. Yes. Are you using the one test of final decision maker then to suggest that what he did creates liability on behalf of the city? There are four ways that you can make your Monell claim. It's not real clear which one you're relying upon. So I think from what you just said, it's probably final decision maker. Is that right? Your Honor. You're going to be able to come back, so you can answer the question when you come back. Sorry. Okay, thank you, counsel. Thank you. May it please the Court, Ms. Phelps. Jeff Mando on behalf of the defendant's appellees, Lawrence County, and Judge Executive Carter. The district court correctly granted summary judgment in favor of my clients, because there was no evidence in this record that the April 2019 Facebook post, which we agree constitutes protective speech, was the motivating factor behind the September 3, 2019 email that was sent to dispatch, not to dispatch Cherryville Fire or LeMaster Towing on calls. In this particular case, what's significant is that between that April 2019 Facebook post and the September 3, 2019 email, two significant events occurred. First and foremost is the one, Judge Murphy, that you highlighted on your question, Ms. Phelps, is that after that Facebook post and the phone call, Mr. LeMaster and LeMaster Towing received a steady increase in the number of calls for wrecker service to go out on the road. And Mr. LeMaster was clear in his testimony that it was steady, that it was good throughout the summer of 2019. The second thing that occurred during the course of that summer was a dispute arose, a personal dispute, a feud between Mr. LeMaster and Judge Carter involving Mr. LeMaster's role as chief of the Cherryville Fire Department. So this case is somewhat unusual in that I clearly think there's a dispute of fact over whether Carter decreased the business. When I read the 911 dispatcher's testimony where she said, he came to us and just told us impersonally or secretly that we shouldn't send business to LeMaster. That creates a dispute of fact. I know you disagreed with that factual allegation, but it's there. So then the question becomes, well, why did he reduce this business in this kind of against policy way? And I don't see any type of legitimate reason provided by Mr. Carter for doing so. And so like if I analogize to Title VII, we have this well-established McDonnell-Douglas framework. The first step is to make a prima facie case, and then the burden shifts to the employer to come back with a legitimate neutral reason. And I just, from reading all of the briefs in this case, do not see any articulation of a reason for why Carter would reduce the business in this way. And that strikes me as circumstantial evidence that it was for an improper reason, that it was for the April 2019 Facebook post. So how would you respond to that line of inquiry, that it's just the legitimate reason is not actually presented in the briefing? First of all, I acknowledge the deposition testimony of the dispatcher, but I think the timing of that, Your Honor, is important. She was referencing after. This was when things occurred, after September of 2019, not before. So I think that does not necessarily then go to support the argument that there's a causal connection between the protected speech and the April Facebook post and the September 3, 2019 email. I think that that deposition testimony, because it referenced timeframes that Judge Carter came to her in the spring of 2020, does not inform the decision on causation. But what is the, as you're standing here today, what it was, I mean, I know he disputes this conversation, but we have to take it as a fact. I understand that. So what is the reason for the reduction in business? First of all, I have to also acknowledge that there's a dispute about the reduction of business, but I have to acknowledge that on summary judgment, those facts have to be construed in favor of the plaintiff. But Judge Carter had a dispute going on with Mr. LeMaster over the fire department. I don't know that there was ever any direct testimony from Judge Carter that I was doing this for X reason or Y reason. He disputes generally that he was trying to reduce them and give them orders. Now, I have to acknowledge the deposition testimony. I'm not running from it. All I'm trying to emphasize is that there's a gap here. The key is, what happened in April 2019? Protected speech in that Facebook post. Then the adverse action, which for purposes of appeal, we agree, was the September 3, 2019 email directing that LeMaster not receive any more calls. That lasted for about four days. I think the record reflects before it was remanded. Although the remanding didn't necessarily, it just was clarifying that you can still call for the fire department aspects. It didn't say anything about calling for that. The email said that, but other testimony from the record was that it never went beyond four days. Isn't that another example of a dispute of fact that we have to let a jury sort out? We would have to take that in the light most favorable. In the light most favorable, I would suggest that this wasn't rescinded. I acknowledge that standard. That's why I'm still going back to the causation element. Counsel, do I understand your argument to be this, that the protected speech is in April. There's no retaliation. Then you get this other dispute and this Facebook posting, and then he retaliates. Your argument is that, yeah, he retaliated, but not in response to protected speech. Correct. That's the inference that you could draw from that August 29, 2019 email or Facebook post. As I read the cases, there has to be some type of nexus between the protected speech and the adverse action. The theory is he engaged. Everybody agrees he didn't have the authority to do this. He did it anyway. He did something improper, but he did it improper for a non-First Amendment protective reason. It was because he disliked the guy. He didn't have the authority. Back to Judge McKee's question about the potential Pembauer argument. He never had the authority. There was an E911 board that governed this. They never took LeMaster off the TOE list. What we have at best is Judge Carter violating the policy. We don't have him making new policy. He's not a final decision maker for purposes of the E911 board. We don't have to worry about this Pembauer liability when you're looking at the Monell claim. I need to address the impact of the Anders decision. My colleague goes to great strides to say that Anders is the case that allows this court to reverse Judge Bunning and send this back for a trial on causation. Anders is distinguishable. There are two things about Anders that I think separate it from what we have here. Number one, Anders was a Rule 12 motion. It was a Civil Rule 12 motion and the court was compelled to construe the allegations in the complaint to be true and draw all reasonable inferences from those allegations in favor of the plaintiff. Secondly, what Anders did was, and Judge McKee I think you addressed this in the question to my colleague, was it didn't just say temporal proximity alone, that the four months alone was sufficient to allow the case to go forward for a causal connection between the statement that Mr. Anders made giving the names to the investigators and the police officers and then Cuevas' decision to remove him from the TOE list. They said no, it's not just that. It had to be coupled with other evidence and they drew the inference that you could couple it with other evidence from the state investigation and other items that were there based on what was alleged. So Anders is distinguishable in that way and it does not carry the weight to compel a reversal of the district court's decision that counsel argues. I think an interesting part about your argument is basically you're saying that he denies that back in April he told them to take him off the list. But we've sort of come around to thinking that's probably a fact question. So you're saying really the reason why he took him off the list is he got in this spat about his operation of the fire department. Isn't that a fact question as to whether your assessment of this, it was due to the dispute about the fire department, is correct or LeMasters is correct that it all starts and goes back to the April post? Why isn't that a fact question? It's not a fact question because the undisputed fact is in between is that LeMaster received a significant increase in the volume of calls. He received good business from the time of that phone conversation in April up through September 3rd. He received a steady volume of calls. Is that a question of liability or damages? I think it goes to both but I think it goes to liability. In a tort sense, your honor, it would be like an intervening superseding cause if this were a tort case. Can it also be that it was all conditional? He engaged in this speech in April and he fixed it in the sense that he did what Carter wanted and so he was back in his good graces. But it was all very conditional. It was conditional on his lack of criticism. And then as soon as that sort of peace evaporated, he was back at retaliating both for April and whatever else. If he was retaliating, in order for the First Amendment claim to survive to go forward, the retaliation has to have a reasonable nexus. It has to be connected to that Facebook post and we've got two things that intervene that take that off the track. The steady volume of calls and the Cherryville Fire Department dispute. But if it's but for, as long as it's still a factor, right? It can be one factor, can't it? No, I think with but for, I think it's incumbent to establish that the adverse action, the removal from the toll list, would not have occurred except for the publication of the Facebook post. Right, right. But that could have started it. I don't think that, from my review... In other words, if you have a situation where there are two factors and it started with one thing and then it simmered down a little and then that first thing was still operating when the retaliation took place, isn't that a jury question whether that first factor was still operating? I don't think so. I think it's the fact that this Cherryville Fire Department dispute arose and the criticism about Billy LeMaster and his operation as fire chief and the fire equipment and how that was being managed and Judge Carter's involvement in trying to set that fire department straight. I think the only reasonable inference that can be drawn is that the directive that was given on September 3rd was as a result of that and that's not protected speech and that's not a First Amendment violation. Why do we say that they clearly, at least arguably, got crosswise with each other in April? Why do we simply say that's all taken care of and gone away and now there's no connection between that and the dispute over the fire department? It seems to me one is at least, if nothing else, background for the other. I don't see it that way. I don't think the evidence supports that. I think the evidence supports that they had a phone call after the Facebook post that Judge Carter wasn't happy with that Facebook post from Billy LeMaster in April. The conversation about, hey, I'm not getting any calls came up. Judge Carter said, I'll look into it. Next thing you know, he's getting a steady volume of calls throughout the summer. Then a separate dispute arises involving this Cherryville Fire Department, Wilma McKenzie, and Judge Carter. That Facebook post, which was August 29, 2019, was four days before the email that was sent directing that Cherryville not be called out and LeMaster not get the calls. Does it matter in answering these questions that we're asking whether it really is but for, which is what we've been using in shorthand, or whether the real test is a substantial or motivating factor? Judge Bunning went to great lengths and I think did a great job trying to assess the state of the law on what the but-for test means. As I read the cases as recently as Anders and Nevis, it's a but-for test. The way I read the cases is that it's ultimately a but-for test, but the burden of proof changes. The plaintiff has the initial burden to come forward to show it was at least a motivating factor. That's a lower standard. Even if it would have been taken for another reason, as long as it was a motivating factor, that's enough. Then it switches to the defendant as an affirmative defense to show that the reduction in business would have been taken solely on another ground. I do think that this burden of proof matchup with the summary judgment standard suggests that it might be easier to survive summary judgment for a plaintiff, because a plaintiff only has to create a genuine issue of material fact on, or just show evidence of it was a motivating factor. This could have been a mixed motive situation where, yeah, there was lots of reasons why these individuals disliked each other, but this April 2019 was at least a motivating factor of it. I would read it as a burden-shifting approach. I acknowledge that there's a discussion of that burden shift in the cases, Judge Murphy, but I want to go back to what happened with the Cherryville Fire Department and how that breaks the chain, that that satisfies our burden and puts it back on plaintiff, and they can't make it. They can't make that burden. For the reasons we've stated, we believe that Judge Bunning's decision was a thorough, correct assessment of the law and the evidence in this case, that he was correct in his ruling, that there was no causal connection between the protected speech and the adverse action, and for those reasons, we ask the court to uphold the district court's ruling. Thank you, Counselor. Thank you. Thank you, Your Honors. I just wanted to address some of Mr. Mando's points. So the fact that it was a Rule 12b motion in Anders has absolutely no bearing on this case because the temporal proximity doesn't change. The adverse action is still that date, and the protected speech is also the same date, which both of those things were known in the complaint. And same way in our case, we knew when the adverse action occurred, when we filed the complaint, and we knew when the speech occurred. Now, there might be additional evidence come up, but that's still a jury question, and there's still enough inferences to be drawn in plaintiff's favor. Also, I think the court should find that this court has not been willing to apply a but-for test in the past two cases because they're not practical in these line of cases because we think that the Cherryville Fire Department conduct actually helps our case if you look at the relationship of Carter and LeMaster before the post. They were friends. He campaigned for him. And then also the number of towing calls that increased, that goes to credibility. Okay, Counsel, your red light is on. Oh, I'm sorry. I'm sorry. Thank you, Your Honors. Okay, thank you. The case is submitted.